# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.A-1.**

**No. 17-0916** (Roane County 17-JA-19)

## MEMORANDUM DECISION

Petitioner Mother, A.A.-2, by counsel David B. Richardson, appeals the Circuit Court of Roane County's September 12, 2017, order terminating her parental rights to A.A.-1[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Ryan M. Ruth, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 15, 2017, the DHHR filed an abuse and neglect petition alleging that petitioner left her two daughters, then ages fourteen months and two years, in the bathtub, unsupervised. The fourteen-month-old was found in the bathtub, face down and unresponsive. She was brain dead and ultimately died as a direct cause of her injuries. According to the DHHR, petitioner admitted to routinely leaving her children unattended in the bathtub. Further, according to an interview with the state police, petitioner blamed her two-year-old child for sitting on the younger child and causing her to drown. The DHHR filed an amended petition in March of 2017 to reflect the death of the younger child.

On March 20, 2017, the circuit court held an adjudicatory hearing wherein petitioner contested the allegations of abuse and neglect set forth in the petition. The DHHR presented evidence of the deceased child's medical records from Charleston Area Medical Center. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner have the same initials, they will be referred to as A.A.-1 and A.A.-2, respectively, throughout this memorandum decision.

1

circuit court found that petitioner failed to provide her children with necessary supervision and, accordingly, adjudicated her as an abusing parent. According to the DHHR, petitioner was also charged criminally for the events that led to the death of her fourteen-month-old daughter. In July of 2017, the DHHR filed a motion requesting the termination of petitioner's parental rights based upon her failure to acknowledge the conditions of abuse and neglect.

On September 11, 2017, the circuit court held a dispositional hearing wherein it considered petitioner's motion for a post-adjudicatory improvement period, as well as the DHHR's motion to terminate her parental rights. Petitioner admitted to running bath water for her children and leaving them unsupervised in the bathtub the day her daughter drowned. She further testified that she lived in an abusive home, but refused to accept responsibility for her actions and attempted to place blame for the drowning incident on her abusive living situation and the children's father. Petitioner testified that she was in counseling and a support group for domestic violence victims and that she would participate in services if they were provided to her. Based on the evidence presented, the circuit court found that there was no reasonable likelihood that petitioner could participate fully in a post-adjudicatory improvement period, nor that she could correct the conditions of abuse, as she was unable to recognize the circumstances that led to the death of her child. Ultimately, the circuit court terminated petitioner's parental rights in its September 12, 2017, order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. She argues that, although the DHHR did not provide her with services, she sought out and participated in counseling to address the abuse and neglect issues.

---

[2]The father is currently participating in a post-adjudicatory improvement period. According to the guardian and the DHHR, the goal is reunification with the father. The concurrent permanency plan is adoption by her foster family.

However, we do not find this argument compelling. West Virginia Code § 49-4-610(2)(B) provides that in order to be granted a post-adjudicatory improvement period, the parent must "demonstrate[ ], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period."

> We have also held that
>
> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Aside from her own testimony stating that she would comply with services, petitioner presented no evidence to show that she would be likely to fully comply with a post-adjudicatory improvement period. Although petitioner testified that she participated in a domestic violence victim support group, the record is devoid of any evidence that petitioner participated in counseling services focusing on abuse and neglect issues prior to the dispositional hearing. She, therefore, did not meet the applicable burden for a post-adjudicatory improvement period. Further, petitioner refused to take responsibility for the incident that led to her child's death. She placed blame on the older child, the father, and her alleged abusive living conditions. Based upon her testimony, petitioner did not understand that leaving the young children unsupervised in the bathtub was dangerous. For these reasons, the circuit court found, and we agree, that petitioner would not benefit from an improvement period. Therefore, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

Next, petitioner argues that the circuit court erred in terminating her parental rights. She argues that it is in the child's best interest to have a relationship with her biological parents. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

As discussed above, petitioner refused to take responsibility for the actions that led to her infant daughter's death. The circuit court, therefore, found that a post-adjudicatory improvement period would be futile and ultimately found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon such findings. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights.

This Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 12, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker